**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| MIGUEL ALMAZO, AYRTON GUERRERO, KELLY LUNA, and EVA LEAL-RUTTEN, on behalf of themselves and others similarly situated, | Civil Case No.: 24-cv-0096 |
| | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| | **JURY TRIAL DEMANDED** |
| v. | |
| 44 STREET F&B LLC d/b/a THE LAMBS CLUB, THE GRAND TOUR COLLECTION LLC d/b/a THE LAMBS CLUB, CHRIS MILLER, and JACK LOGUE, | |
| Defendants. | |

---

Plaintiffs Miguel Almazo ("Almazo"), Ayrton Guerrero ("Guerrero"), Kelly Luna ("Luna"), and Eva Leal-Rutten ("Leal-Rutten") (together, "Plaintiffs"), by and through their attorneys, Faruqi & Faruqi, LLP, and on behalf of themselves and others similarly situated, hereby allege as follows against Defendants 44 Street F&B LLC d/b/a The Lambs Club, The Grand Tour Collection LLC d/b/a The Lambs Club (collectively "Corporate Defendants"), Chris Miller ("Miller"), and Jack Logue ("Logue") (together, "Defendants"):

## NATURE OF THE CLAIMS

1.     Defendants own and operate a restaurant, lounge, and event space in New York, New York, doing business under the name "The Lambs Club."

2.     Defendants engage in a common, willful, and deliberate policy and practice of denying Plaintiffs and other similarly situated Waitstaff (defined *infra* at ¶ 47) minimum and overtime wages by improperly paying them at a "tipped" minimum wage rate without satisfying the strict tip credit requirements of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

3.    Defendants further engage in a common, willful, and deliberate policy and practice of denying Waitstaff minimum and overtime wages due to a policy of time shaving.

4.    Defendants also engage in a common, willful, and deliberate policy and practice of illegally retaining gratuities and allowing managers to retain portions of tips that customers left for Waitstaff.

5.    Defendants have also consistently failed to furnish Waitstaff with NYLL compliant Notices of Pay Rate and accurate wage statements, as required by law.

6.    When Almazo and Guerrero complained about Defendants' unlawful wage practices, Defendants retaliated against them by terminating their employment.

7.    Almazo's, Guerrero's, and Leal-Rutten's claims against Defendants to redress these wrongs are brought, in part, under the FLSA as a collective action, pursuant to 29 U.S.C. § 216(b), and applicable regulations thereunder, on behalf of themselves and all other similarly situated Waitstaff employed by Defendants at any time during the full statute of limitations period.

8.    Plaintiffs' claims are also brought, in part, under the NYLL, and applicable regulations thereunder, as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of themselves and all other similarly situated Waitstaff employed by Defendants at any time during the full statute of limitations period.

9.    Almazo and Guerrero also bring retaliation claims individually under the FLSA and NYLL.

10.    Leal-Rutten further brings discrimination claims individually under the New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), alleging that Defendants refused to promote her on the basis of her sex.

## JURISDICTION AND VENUE

11.     Pursuant to 28 U.S.C. §§ 1331 and 1343, the Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA.

12.     The Court also has supplemental jurisdiction over Plaintiffs' related claims arising under State law pursuant to 28 U.S.C. § 1367.

13.     Venue is proper under 28 U.S.C. § 1391 because Defendants' principal place of business is located in this District and a substantial portion of the events or omissions giving rise to this action occurred in this District.

## PARTIES

### A.     Plaintiff Miguel Almazo

14.     Almazo is a resident of New York City and was employed by Defendants from on or around October 1, 2022 until on or about October 6, 2023.

15.     At all relevant times, Almazo was an "employee" of Defendants within the meaning of all applicable statutes and regulations.

### B.     Plaintiff Ayrton Guerrero

16.     Guerrero is a resident of New Jersey and was employed by Defendants from in or around June 2022 through in or around November 2023.

17.     At all relevant times, Guerrero was an "employee" of Defendants within the meaning of all applicable statutes and regulations.

### C.     Plaintiff Kelly Luna

18.     Luna is a resident of New York City and was employed by Defendants from in or around May 2023 through in or around December 2023.

19.     At all relevant times, Luna was an "employee" of Defendants within the meaning of all applicable statutes and regulations.

**D.      Plaintiff Eva Leal-Rutten**

20.     Leal-Rutten is a resident of New York City and was employed by Defendants from in or around March 2022 through in or around December 2023.

21.     At all relevant times, Leal-Rutten was an "employee" of Defendants within the meaning of all applicable statutes and regulations.

**E.      Corporate Defendants 44 Street F&B LLC d/b/a Lambs Club and The Grand Tour Collection LLC d/b/a Lambs Club**

22.     44 Street F&B LLC d/b/a Lambs Club is a domestic corporation with its principal place of business located at 132 West 44th Street, New York, NY 10036.

23.     At all relevant times, 44 Street F&B LLC controlled and directed the terms of employment and compensation of Plaintiffs and all others similarly situated.

24.     At all relevant times, 44 Street F&B LLC established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all others similarly situated, including, *inter alia*, scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices applicable to Plaintiffs and all others similarly situated.

25.     At all relevant times, 44 Street F&B LLC maintained and exercised its power to hire, fire, discipline, and promote Plaintiffs and all others similarly situated.

26.     At all relevant times, 44 Street F&B LLC was an "employer" of Plaintiffs and all others similarly situated within the meaning of all applicable statutes and regulations.

27.     The Grand Tour Collection LLC is a domestic corporation with its principal place of business located at 132 West 44th Street, New York, NY 10036.

28.     At all relevant times, The Grand Tour Collection LLC controlled and directed the terms of employment and compensation of Plaintiffs and all others similarly situated.

29.     At all relevant times, The Grand Tour Collection LLC established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all others similarly situated, including, *inter alia*, scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices applicable to Plaintiffs and all others similarly situated.

30.     At all relevant times, The Grand Tour Collection LLC maintained and exercised its power to hire, fire, discipline, and promote Plaintiffs and all others similarly situated.

31.     At all relevant times, The Grand Tour Collection LLC was an "employer" of Plaintiffs and all others similarly situated within the meaning of all applicable statutes and regulations.

32.     Throughout Plaintiffs' employment, Corporate Defendants operate or operated The Lambs Club as a single integrated enterprise.  Corporate Defendants are engaged in related activities and share a common business purpose.

33.     At all relevant times, Corporate Defendants each were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the regulations thereunder.

34.     Upon information and belief, at all relevant times The Lambs Club had an annual gross volume of sales in excess of $500,000.00.

**E.     Defendant Chris Miller**

35.     Miller is the Managing Partner and Beverage Director at The Lambs Club and a resident of the State of New Jersey.

36.     At all relevant times, Miller controlled and directed the terms of employment and compensation of Plaintiffs and all others similarly situated.

37.     At all relevant times, Miller maintained and exercised his power to hire, fire, discipline, and promote Plaintiffs and all others similarly situated.

38.     At all relevant times, Miller maintained control, oversight, and direction of Plaintiffs and all others similarly situated, including, *inter alia*, scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices applicable to Plaintiffs and all others similarly situated.

39.     At all relevant times, Miller was an "employer" of Plaintiffs and all others similarly situated within the meaning of all applicable statutes and regulations.

**F.      Defendant Jack Logue**

40.     Logue is a Partner and Executive Chef at The Lambs Club and a resident of the State of New York.

41.     At all relevant times, Logue controlled and directed the terms of employment and compensation of Plaintiffs and all others similarly situated.

42.     At all relevant times, Logue maintained and exercised his power to hire, fire, discipline, and promote Plaintiffs and all others similarly situated.

43.     At all relevant times, Logue maintained control, oversight, and direction of Plaintiffs and all others similarly situated, including, *inter alia*, scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices applicable to Plaintiffs and all others similarly situated.

44.     At all relevant times, Logue was an "employer" of Plaintiffs and all others similarly situated within the meaning of all applicable statutes and regulations.

## FACTS

### A.    Background

45.    Defendants own and operate a restaurant, lounge, and event space in New York County, New York, doing business under the name, "The Lambs Club."

46.    Defendants employ a staff of approximately 60-100 employees at any given time.

47.    Waitstaff of the Restaurant hold various titles, including, *inter alia*: (i) Servers; (ii) Bussers; (iii) Runners; (iv) Bartenders; (v) Barbacks, and (vi) Back Waiters (collectively, "Waitstaff").

### B.    Time Shaving

48.    Throughout the statutory period, Defendants have utilized a timekeeping system in which Waitstaff clock in and out to track the number of hours they work during each one-week pay period.

49.    Each pay period spans from Monday through Sunday.

50.    At the end of each pay period, Defendants give Waitstaff pay slips supposedly reflecting the total number of hours each Waitstaff worked during the preceding pay period, along with their earned wages for working those hours.

51.    However, the pay slips do not accurately reflect the actual number of hours that Waitstaff work.

52.    On the contrary, Defendants engage in a common pattern and practice of deliberately reducing Waitstaff' hours worked, such that Waitstaff are paid for fewer hours than they log in Defendants' timekeeping system.

53.    Although Plaintiffs were typically required to work through their shifts and could not take breaks, Defendants would automatically deduct thirty (30) minutes as a "meal break" from

their hours worked for every shift.  FLSA Collective Plaintiffs and Class Members would similarly

have their weekly hours shaved for meal breaks but be required to continue working through them.

C.    **Failure to Pay Minimum and Overtime Wages Due to Invalid Tip Credit**

54.    Defendants engage in a common pattern and practice of deliberately denying

Waitstaff minimum and overtime wages owed.

55.    Defendants systematically deny Waitstaff wages in several ways.

56.    First, Defendants pay Waitstaff at rates below the applicable minimum wage based

on an invalid tip credit.

57.    Second, Defendants fail to pay Waitstaff at a rate of one and one-half times their

agreed upon rates of pay or the applicable minimum wage for any of their hours worked in excess

of 40 hours in a workweek.

58.    Defendants are not entitled to take a tip credit against Plaintiffs' wages for several

reasons.

59.    First, Defendants improperly claimed the tip credit for all hours worked despite

having caused tipped employees to engage in non-tipped duties for hours far exceeding twenty

percent (20%) of the total hours worked during a given shift each workweek, and required tipped

employees to engage in non-tipped duties for continuous periods longer than 30 minutes.

60.    Waitstaff were required to engage in non-tipped duties such as preparing event

space for events, breaking down event spaces, polishing glasses and silverware, sweeping and

mopping the floors, cleaning the fridges, dusting off bottles, organizing furniture, and organizing

plates and silverware, among other duties.

61.    Second, Defendants implemented an invalid tip pooling scheme whereby

managers, including managers Angela Merkaj and David Jovic, and other non-tipped employees

8

participated in the tip pool and retained tips. Defendants were accordingly ineligible to avail themselves of the tip credit under the FLSA and NYLL.

62. Third, Defendants failed to accurately keep track of daily tips earned and maintain records thereof.

63. Fourth, pursuant to the NYLL, Defendants are required to provide Waitstaff with a "Notice of Tip Credit" before applying a tip credit against their wage obligations to such tipped employees.

64. The Notice of Tip Credit must state each Waitstaff's: (i) hourly rate; (ii) overtime rate; (iii) amount of the tip credit; (iv) regular pay day; and (v) extra pay that is required if tips are insufficient to bring them up to the statutory minimum wage.

65. Defendants did not properly provide Plaintiffs with a Notice of Tip Credit compliant with the requirements of the NYLL.

66. As such, Waitstaff are entitled to recover the difference between the hourly rates they were paid and the applicable State minimum wage rates they should have been paid (plus overtime on such rates) for the hours they worked.

**D.    Failure to Provide Notices of Pay Rate and Accurate Wage Statements**

67. The NYLL requires that Defendants provide Waitstaff, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances . . . ; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other

information as the commissioner deems material and necessary[,]" which is commonly referred to as a Notice of Pay Rate. NYLL § 195(1)(a).

68.    Throughout the statutory period, Defendants never provided Waitstaff with Notices of Pay Rate that accurately reflected their pay or applicable deductions.

69.    The NYLL also requires that Defendants furnish Waitstaff with accurate wage statements with each payment of wages.

70.    Throughout the statutory period, Defendants never furnished accurate wage statements to Waitstaff.

71.    Upon information and belief, Defendants chose not to provide these required notices and wage statements to Plaintiffs to avoid informing them of their rights under the NYLL and therefore avoid paying them the proper minimum and overtime wage rates due to them.

### E.    Plaintiff Miguel Almazo

72.    Almazo worked at The Lambs Club as a bartender from on or about October 1, 2022 through on or about October 6, 2023.

73.    Almazo's duties as a bartender included, *inter alia*, preparing and serving beverages for customers. However, he was also required to engage in more than 20% of his working time performing non-tipped related activities such as preparing event space for events, breaking down event spaces, polishing glasses and silverware, sweeping and mopping the floors, cleaning the fridges, dusting off bottles, organizing furniture, and organizing plates and silverware, among other duties.

74.    Throughout his employment at The Lambs Club, Almazo was typically scheduled to work between approximately thirty-seven (37) to fifty-three (53) hours per workweek at The Lambs Club, and typically working four to six shifts per week from approximately 3:00 p.m. to

11:00 p.m. and occasionally morning shifts from 10:30 a.m. to 3:00 p.m.

75.    Throughout his employment, Defendants paid Almazo $10.00 per regular hour and $17.50 per overtime hour worked.

76.    For example, Almazo worked approximately 48 hours during the workweek of September 11, 2023 to September 17, 2023.

77.    However, Defendants paid Almazo for only 43.87 hours of work for that week – improperly shaving over 3 hours of his working time for which he was not compensated at all.

78.    Moreover, Defendants paid Almazo only $10.00 per hour for his first forty hours and $17.50 per hour for 4.87 of his overtime hours worked during that workweek.

79.    Defendants never provided Almazo with a Notice of Pay Rate that met the requirements of the NYLL.

80.    Defendants never provided Almazo with accurate wage statements.

81.    In or around September 2023, Almazo complained to Defendants regarding their unlawful wage practices, including Defendants' failure to pay him at the correct rate for all hours worked and unlawful deductions from tips.

82.    Less than a month after his protected complaint, Defendants terminated Almazo in or about October 2023 in retaliation for his protected activity.

F.    **Plaintiff Ayrton Guerrero**

83.    Guerrero worked at The Lambs Club as a back waiter, food runner, and bartender from on or about June 2022 through on or about November 2023.

84.    Guerrero's duties as a back waiter, food runner, and bartender included, *inter alia*, serving food and beverages for customers.  However, he was also required to engage in more than 20% of his working time performing non-tipped related activities such as preparing event space

11

for events, breaking down event space, polishing glasses and silverware, sweeping and mopping the floors, cleaning the fridges, dusting off bottles, organizing furniture, and organizing plates and silverware, among other duties.

85.    Throughout his employment at The Lambs Club, Guerrero was typically scheduled to work between approximately thirty-seven (37) to fifty-three (53) hours per workweek at The Lambs Club, typically working four to six shifts per week from approximately 3:00 p.m. to 11:00 p.m. and occasionally morning shifts from 10:30 a.m. to 3:00 p.m.

86.    Throughout his employment, Defendants paid Guerrero $10.00 per regular hour and $17.50 per overtime hour worked.

87.    For example, Guerrero worked approximately 51 hours during the workweek of May 29, 2023 to June 4, 2023.

88.    However, Defendants paid Guerrero for only 47.53 hours of work for that week – improperly shaving over 3 hours of his working time for which he was not compensated at all.

89.    Moreover, Defendants paid Guerrero only $10.00 per hour for his first forty hours and $17.50 per hour for 7.53 of his overtime hours worked during that workweek.

90.    Defendants never provided Guerrero with a Notice of Pay Rate that met the requirements of the NYLL.

91.    Defendants never provided Guerrero with accurate wage statements.

92.    In or around October 2023, Guerrero complained to Defendants regarding their unlawful wage practices, including Defendants' failure to pay him at the correct rate for all hours worked and unlawful deductions from tips.

93.    Less than a month after his protected complaint, Defendants terminated Guerrero in or about November 2023 in retaliation for his protected activity.

### G.    Plaintiff Kelly Luna

94.    Luna worked at The Lambs Club as a bartender from on or about May 2023 through on or about December 2023.

95.    Luna's duties as a bartender included, *inter alia*, preparing and serving food and beverages for customers.  However, she was also required to engage in more than 20% of her working time performing non-tipped related activities such as preparing event space for events, breaking down event space, polishing glasses and silverware, sweeping and mopping the floors, cleaning the fridges, dusting off bottles, organizing furniture, and organizing plates and silverware, among other duties.

96.    Throughout her employment at The Lambs Club, Luna was typically scheduled to work between approximately twenty-five (25) to thirty-five (35) hours per workweek at The Lambs Club, typically working three to four shifts per week from approximately 3:00 p.m. to 11:00 p.m.

97.    Throughout her employment, Defendants paid Luna $10.00 per regular hour and $17.50 per overtime hour worked.

98.    For example, Luna worked approximately 32.5 hours for the workweek of September 11, 2023 to September 17, 2023.

99.    However, Defendants paid Luna for only 30.18 hours of work for that week – improperly shaving over 2 hours of her working time for which she was not compensated at all.

100.    Moreover, Defendants paid Luna only $10.00 per hour for 30.18 of the hours she worked that week.

101.    In addition, Defendants improperly shaved approximately 2 hours of time from this week for which she was not compensated at all.

102.    Defendants never provided Luna with a Notice of Pay Rate that met the requirements of the NYLL.

103.    Defendants never provided Luna with accurate wage statements.

**H.    <u>Plaintiff Eva Leal-Rutten</u>**

104.    Leal-Rutten worked at The Lambs Club as a server from on or about March 2022 through on or about December 2023.

105.    Leal-Rutten's duties as a server included, *inter alia*, serving food for customers. However, she was also required to engage in more than 20% of her working time performing non-tipped related activities such as preparing event space for events, breaking down event space, polishing glasses and silverware, sweeping and mopping the floors, cleaning the fridges, dusting off bottles, organizing furniture, and organizing plates and silverware, among other duties.

106.    Throughout her employment at The Lambs Club, Leal-Rutten was typically scheduled to work between approximately thirty-seven (37) to fifty-three (53) hours per workweek at The Lambs Club, typically working four to six shifts per week from approximately 3:00 p.m. to 11:00 p.m. and occasionally morning shifts from 10:30 a.m. to 3:00 p.m.

107.    Throughout her employment, Defendants paid Leal-Rutten $10.00 per regular hour and $17.50 per overtime hour worked.

108.    For example, Leal-Rutten worked approximately 44.5 hours during the workweek of December 19, 2022 to December 25, 2022.

109.    However, Defendants paid Leal-Rutten for only 41.42 hours of work for that week – improperly shaving over 3 hours of her working time for which she was not compensated at all.

110.    Moreover, Defendants paid Leal-Rutten only $10.00 per hour for her first forty hours and $17.50 per hour for 1.42 of her overtime hours worked during that workweek.

111.     Defendants never provided Leal-Rutten with a Notice of Pay Rate that met the requirements of the NYLL.

112.     Defendants never provided Leal-Rutten with accurate wage statements.

113.     In addition to the above, Leal-Rutten suffered from Defendants' discriminatory practices, as described below.

114.     Leal-Rutten is a woman.

115.     As an experienced hospitality professional, Leal-Rutten was approached by Michael Welch, The Lambs Club's former Director of Operations, and Gary Schenk, The Lambs Club's former General Manager, about whether she was interested in a managerial position, a role for which she was qualified and which would allow her to make a more consistent income and advance in her career.  Leal-Rutten expressed that she was interested in the position.

116.     On or about October 2023, a meeting of managers occurred where they discussed Leal-Rutten's request to be a manager.  There, upon information and belief, Defendants Miller & Logue stated that Leal-Rutten would be a poor choice to be a manager and should not be promoted because, as a woman, she was likely to get married and have children and thus be insufficiently committed to the position.

117.     Leal-Rutten never received a promotion to manager during her time at The Lambs Club and the manager role was instead given, upon information and belief, to a man.

118.     Leal-Rutten was denied a promotion on the basis of her sex.

119.     Due to Defendants' violations under the NYSHRL and NYCHRL, based on discrimination on the basis of sex, Leal-Rutten is entitled to recover damages from Defendants including: (1) compensatory damages; (2) punitive damages; and (3) attorney's fees and costs.

## FLSA COLLECTIVE ACTION ALLEGATIONS

120.    Plaintiffs Almazo, Guerrero, and Leal-Rutten ("FLSA Plaintiffs") bring this action, in part, as a collective action under the FLSA and applicable regulations thereunder.

121.    FLSA Plaintiffs seek to maintain claims, pursuant to FLSA § 216(b), on behalf of themselves and all other Waitstaff who have been employed by Defendants at any time during the full statute of limitations period (the "FLSA Collective").

122.    At all relevant times, FLSA Plaintiffs and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, plans, and scheme, and were subject to Defendants' practices of failing to compensate FLSA Plaintiffs and the FLSA Collective at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

123.    Defendants were not entitled to take a tip credit against FLSA Plaintiffs' and the FLSA Collective's wages.

124.    Defendants unlawfully misappropriated portions of the gratuities of FLSA Plaintiffs and the FLSA Collective by giving them to tip-exempt managers, in violation of 29 U.S.C. § 203(m)(2)(B).

125.    Throughout the full statute of limitations period, Defendants have been fully aware of the duties performed by FLSA Plaintiffs and the FLSA Collective, and that those duties were not exempt from the provisions of the FLSA.

126.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged FLSA Plaintiffs and the FLSA Collective.

127.    As a result of Defendants' conduct, they are liable to FLSA Plaintiffs and the FLSA

Collective for the full amount of their unpaid wages with interest, an additional equal amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiffs and the FLSA Collective.

128.    While the exact number of the FLSA Collective is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are approximately 100 other similarly situated persons who were employed by Defendants during the full statute of limitations period.

129.    Plaintiffs are currently unaware of the identities of the members of the FLSA Collective.

130.    Accordingly, Defendants should be required to provide Plaintiffs with a list of all persons employed by Defendants during the full statute of limitations period, along with their last known addresses, telephone numbers, and email addresses, so Plaintiffs can give the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate in it.

## CLASS ACTION ALLEGATIONS

131.    Plaintiffs bring this action, in part, as a class action under the NYLL and applicable regulations thereunder.

### A.    Class Definition

132.    Plaintiffs seek to maintain claims, pursuant to FRCP 23, on behalf of themselves and a class of all other Waitstaff who have been employed by Defendants at any time during the full statute of limitations period (the "NYLL Class").

133.    Plaintiffs allege, on behalf of themselves and the NYLL Class, that Defendants violated the NYLL by, *inter alia*: (i) failing to pay Plaintiffs and the NYLL Class at or above the

applicable State minimum wage rate for all hours worked because Defendants were not entitled to claim any tip credit as they failed to meet the statutory requirements under the NYLL; (ii) failing to pay wages for all hours worked due to a policy of time shaving; (iii) failing to compensate Plaintiffs and the NYLL Class at one and one-half times their regular rate of pay (or the applicable State minimum wage rate) for all hours worked in excess of 40 hours in a workweek; (iv) misappropriating tips due to Plaintiffs and the NYLL Class members; (v) failing to provide accurate Notices of Pay Rate; and (vi) failing to furnish accurate wage statements.

134.    Plaintiffs and the NYLL Class have standing to seek such relief because of the adverse effects that Defendants' wage practices have had on them individually and as a group.

135.    The wage practices described in this Complaint are part of Defendants' normal course of conduct.

136.    The claims brought pursuant to the NYLL may be pursued by all similarly situated persons who do not opt out of the NYLL Class, pursuant to FRCP 23.

**B.    <u>Requirements of Rule 23(a)</u>**

**i.    Numerosity and Impracticability of Joinder**

137.    The members of the NYLL Class are so numerous that joinder of all members is impracticable.

138.    While the exact number of the members of the NYLL Class is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are approximately 150 members of the NYLL Class.

139.    Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**ii.    Common Questions of Law and Fact**

140.    Common questions of law and fact, the answers to which will meaningfully

advance this litigation, exist as to the NYLL Class and predominate over any questions only affecting the members of the NYLL Class individually.

141.    Indeed, there are few, if any, purely individual issues in this action (apart from the retaliation claims by Almazo and Guerrero and sex discrimination claims by Leal-Rutten which are pursued on an individual basis).

142.    The questions of law and fact that are common to Plaintiffs and the NYLL Class include, without limitation:

(a)    Whether Defendants employed Plaintiffs and the NYLL Class within the meaning of the New York Labor Law;

(b)    Whether Defendants failed to pay Plaintiffs and the NYLL Class at or above the applicable State minimum wage;

(c)    Whether Defendants failed to pay Plaintiffs and the NYLL Class all overtime wages owed to them;

(d)    Whether Defendants operated their business with a policy of not compensating employees for all hours worked due to time-shaving;

(e)    Whether Defendants properly provided written notice to all tipped employees, consistent with the requirements of the NYLL, that Defendants were taking a tip credit;

(f)    Whether Defendants improperly misappropriated portions of the gratuities due to Plaintiffs and the NYLL Class;

(g)    Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

(h)    Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% or two hours of their work shift;

19

(i)    Whether Defendants failed to provide Plaintiffs and the NYLL Class with Notices of Pay Rate;

(j)    Whether Defendants failed to furnish accurate wage statements to Plaintiffs and the NYLL Class; and

(k)    Whether Plaintiffs and the NYLL Class are entitled to liquidated damages and injunctive relief.

143.    Therefore, the common question requirement of FRCP 23(a) is satisfied.

**iii.    Typicality of Claims and Relief Sought**

144.    Plaintiffs' claims are typical of the claims of the members of the NYLL Class they seek to represent.

145.    Plaintiffs and the NYLL Class work, or have worked, for Defendants and are, or were, subject to the same compensation policies and practices.

146.    The wage practices suffered by Plaintiffs, and the damages resulting therefrom, are sadly typical of Defendants' treatment of their Waitstaff generally, and of the NYLL Class specifically.

147.    Therefore, the typicality requirement of FRCP 23(a) is satisfied.

**iv.    Adequacy of Representation**

148.    Plaintiffs will fairly and adequately protect the interests of the NYLL Class because their interests are coextensive and aligned with those of the members of the NYLL Class.

149.    Plaintiffs have no interests adverse to the NYLL Class they seek to represent and have retained competent and experienced counsel.

150.    Plaintiffs are willing and able to represent the NYLL Class as fairly and vigorously as they pursue their similar individual claims.

151.    Plaintiffs have retained counsel who are qualified and experienced in employment class action litigation and who are able to meet the demands necessary to litigate a class action of this size and complexity.

152.    The combined interests, experience, and resources of Plaintiffs and their counsel to competently litigate the individual and NYLL Class claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a).

C.    **Requirements of Rule 23(b)(1)**

153.    Without certification of the NYLL Class, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

154.    Accordingly, certification of the NYLL Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the NYLL Class, and Defendants.

155.    By filing this Complaint, Plaintiffs are preserving the rights of the NYLL Class with respect to the statute of limitations on their claims.

156.    Therefore, not certifying a class would substantially impair and/or impede the remaining members of the NYLL Class's ability to protect their interests.

D.    **Requirements of Rule 23(b)(2)**

157.    Defendants acted on grounds, described herein, generally applicable to Plaintiffs and the NYLL Class by denying Plaintiffs and the NYLL Class all wages owed, minimum and overtime wages, and failing to furnish proper Notices of Pay Rate and accurate wage statements.

158.    These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiffs and the NYLL Class as a whole.

159.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of, all wages owed, minimum and overtime wages, misappropriated gratuities, Notices of Pay Rate and accurate wage statements.

160.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiffs' and the NYLL Class's entitlement to monetary and non-monetary remedies for such wage violations.

161.    Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**E.    <u>Requirements of Rule 23(b)(3)</u>**

162.    The common issues of fact and law affecting Plaintiffs' claims and those of the NYLL Class—including, without limitation, the common issues identified in the paragraphs above—predominate over issues affecting only individual claims.

163.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims and the claims of the NYLL Class.

164.    The cost of proving Defendants' pattern and practice of denying minimum, overtime, and other wages makes it impractical for the members of the NYLL Class to pursue their claims individually.

165.    This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of all members of the NYLL Class (they must have worked for Defendants as Waitstaff during the statutory period), as well as the common questions of law and fact described herein.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME**
(*On Behalf of FLSA Plaintiffs and the FLSA Collective*)

166.    Plaintiffs Almazo, Guerrero, and Leal-Rutten ("FLSA Plaintiffs"), on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

167.    During the full statutory period, FLSA Plaintiffs and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

168.    The FLSA requires covered employers, including Defendants, to compensate Waitstaff at a rate not less than one and one-half times their regular rate of pay and at a rate not less than one and one-half times the federal minimum wage for all hours worked in excess of 40 hours in a workweek.

169.    FLSA Plaintiffs and the FLSA Collective were not exempt from the requirement that Defendants pay them overtime under the FLSA, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

170.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate FLSA Plaintiffs and the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

171.    As a result of Defendants' failure to compensate FLSA Plaintiffs and the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

172.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate FLSA Plaintiffs and the FLSA Collective in accordance with the FLSA.

173.    Defendants' violations of the FLSA have significantly damaged FLSA Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY MINIMUM WAGE**
**(*On Behalf of Plaintiffs and the NYLL Class*)**

174.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

175.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

176.    The NYLL requires covered employers, including Defendants, to compensate Waitstaff at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek.

177.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants pay them minimum wages under the NYLL, and they are entitled to be paid minimum wages by Defendants for all hours worked under 40 hours in a workweek during the full statute of limitations period.

178.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the NYLL Class at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek.

179.    As a result of Defendants' failure to compensate Plaintiffs and the NYLL Class at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

180.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

181.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY OVERTIME WAGES
### (*On Behalf of Plaintiffs and the NYLL Class*)

182.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

183.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

184.    The NYLL requires covered employers, including Defendants, to compensate Waitstaff at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek and at a rate not less than one and one-half times the applicable State minimum wage for all hours worked in excess of 40 hours in a workweek.

185.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants pay them overtime under the NYLL, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

186.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the NYLL Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

187.    As a result of Defendants' failure to compensate Plaintiffs and the NYLL Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

188.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

189.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY ALL WAGES OWED**
**(*On Behalf of Plaintiffs and the Class*)**

190.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

191.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

192.    The NYLL requires covered employers, including Defendants, to compensate Plaintiffs and the NYLL Class at their established regular rates of pay for all hours worked in a workweek.

193.    Plaintiffs and the NYLL Class were not exempt from the requirement and are entitled to be paid by Defendants at their established regular rates of pay for all hours worked in a workweek, during the full statute of limitations period.

194.    Throughout the full statute of limitations period, Defendants have engaged in a common policy and practice of failing to pay Plaintiffs and the NYLL Class at their established regular rates of pay for all hours worked.

195.    As a result of Defendants' failure to compensate Plaintiffs and the NYLL Class at their established regular rates of pay (or one and one-half times their established regular rates) for all hours worked, Defendants have violated the NYLL and/or applicable regulations thereunder.

196.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

197.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: NOTICES OF PAY RATE**
*(On Behalf of Plaintiffs and the NYLL Class)*

198.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

199.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

200.    The NYLL requires covered employers, including Defendants, to provide Waitstaff, "at the time of hiring, a notice containing the following information:  the rate or rates of

pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances . . . ; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.  NYLL § 195(1)(a).

201.    Plaintiffs  and  the  NYLL  Class  were  not  exempt  from  the  requirement  that Defendants provide them with Notices of Pay Rate.

202.    Throughout  the  full  statute  of  limitations  period,  Defendants  have  engaged  in  a policy and practice of unlawfully failing to provide Notices of Pay Rate to Plaintiffs and the NYLL Class.

203.    As a result of Defendants' failure to provide Notices of Pay Rate to Plaintiffs and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

204.    Defendants  have  acted  willfully  and  deliberately  in  maintaining  an  intentional practice of failing to provide proper notices to Plaintiffs and the NYLL Class in accordance with the NYLL.

205.    Further, due to Defendants' failure to provide proper Notices of Pay Rate, Plaintiffs and the NYLL Class have suffered concrete harm.

206.    Specifically, Plaintiffs and the NYLL Class have been prevented from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that they were underpaid; and (iii) taking appropriate action to obtain the payments due to them.

207.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover $50 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: ACCURATE WAGE STATEMENTS**
(*On Behalf of Plaintiffs and the NYLL Class*)

208.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

209.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

210.    The NYLL requires covered employers, including Defendants, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages;  name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage . . . ; and net wages."  NYLL § 195(3).

211.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants provide them with proper wage statements.

212.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to furnish accurate wage statements to Plaintiffs and the NYLL Class.

213.    As a result of Defendants' failure to furnish accurate wage statements to Plaintiffs and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

214.    Further, due to Defendants' failure to furnish accurate wage statements, Plaintiffs and the NYLL Class have suffered concrete harm.

215.    Specifically, Plaintiffs and the NYLL Class have been prevented from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that they were underpaid; and (iii) taking appropriate action to obtain the payments due to them.

216.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover $250 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
## VIOLATIONS OF THE FLSA: MISAPPROPRIATION OF TIPS
### (*On Behalf of Plaintiffs and the FLSA Collective*)

217.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

218.    29 U.S.C. § 203(m)(2)(B) prohibits employers from retaining tips received by employees for any purpose, including allowing managers or supervisors to keep any portion of employees' tips.

219.    Defendants willfully violated the FLSA by taking a portion of the plaintiffs' and collective action members' tips and giving them to non-tipped employees, including managers Angela Merkaj and David Jovic.

220.    As a result of Defendants' violations, Plaintiffs and FLSA Collective have suffered damages and are entitled to recover their misappropriated tips, liquidated damages, attorneys' fees and costs, and pre-judgement and post-judgement interest.

## EIGHTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: MISAPPROPRIATION OF TIPS
### (*On Behalf of Plaintiffs and the NYLL Class*)

221.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

222.    NYLL § 196–d and regulations issued thereunder, *see* 12 N.Y.C.R.R. §§ 146 2.14–2.15 prohibit employers from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee.

223.    Defendants willfully violated these provisions by requiring Plaintiffs and NYLL Class to share a portion of the gratuities they received with non-tipped employees, including managers Angela Merkaj and David Jovic.

224.    As a result of Defendants' willful violation of NYLL § 196-d and NYDOL Regulations, Plaintiffs and NYLL Class suffered damages and are entitled to recover their misappropriated tips, liquidated damages, attorneys' fees and costs, and prejudgment and post-judgment interest.

## NINTH CAUSE OF ACTION
## VIOLATIONS OF THE FLSA: RETALIATION
### (*On Behalf of Almazo and Guerrero Individually*)

225.    Almazo and Guerrero hereby repeat and reallege the foregoing allegations as if set forth fully herein.

226.    During the full statutory period, Almazo and Guerrero were protected by the provisions of the FLSA, 29 U.S.C. §§ 201, *et seq*., as well as all applicable regulations thereunder.

227.    As set forth above, Almazo and Guerrero complained to Defendants regarding Defendants' violations of the FLSA.

228.    Defendants retaliated against Almazo and Guerrero for their protected activity by, *inter alia*, terminating their employment.

229.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Almazo and Guerrero have suffered, and continue to suffer, monetary and/or economic harm for which they are entitled to an award of damages.

230.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Almazo and Guerrero have suffered, and continue to suffer, emotional distress for which they are entitled to an award of compensatory damages.

231.    Defendants' unlawful and retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Almazo and Guerrero's rights under the FLSA, for which Almazo and Guerrero are entitled to an award of punitive damages.

232.    Almazo and Guerrero are further entitled to an award of liquidated damages, prejudgment interest, and attorneys' fees and costs.

**TENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: RETALIATION**
**(*On Behalf of Almazo and Guerrero Individually*)**

233.    Almazo and Guerrero hereby repeat and reallege the foregoing allegations as if set forth fully herein.

234.    During the full statutory period, Almazo and Guerrero were protected by the provisions of the NYLL, N.Y. Lab. Law § 215, *et seq*., as well as all applicable regulations thereunder.

235.    As set forth above, Almazo and Guerrero complained to Defendants regarding Defendants' violations of the NYLL.

236.    Defendants retaliated against Almazo and Guerrero for their protected activity by terminating their employment.

237.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Almazo and Guerrero have suffered, and continue to suffer, monetary and/or economic harm for which they are entitled to an award of damages.

238.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Almazo and Guerrero have suffered, and continue to suffer, emotional distress for which they are entitled to an award of compensatory damages.

239.    Defendants' unlawful and retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Almazo and Guerrero's rights under the NYLL, for which Almazo and Guerrero are entitled to an award of punitive damages.

240.    Almazo and Guerrero are further entitled to an award of liquidated damages, prejudgment interest, and attorneys' fees and costs.

### ELEVENTH CAUSE OF ACTION
### VIOLATIONS OF THE NYSHRL: SEX DISCRIMINATION
#### (*On Behalf of Leal-Rutten Individually*)

241.    Leal-Rutten hereby repeats and realleges the foregoing allegations as if set forth fully herein.

242.    The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of sex.

243.    Leal-Rutten was an employee and qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

244.    Defendants operated a business that discriminated against Leal Rutten in violation of Section 296(1)(a) with respect to the terms, conditions, and privileges of her employment by denying her a promotion because of her sex.

245.    Defendants conduct was intentional, malicious, and in reckless disregard of her protected rights under Section 296 of the NYSHRL.

246.    As a result of Defendants' unlawful discriminatory practices, Leal-Rutten sustained injury, including economic damages and past and future physical and emotional distress.

247.    Due to Defendants' violations under the NYSHRL, based on discrimination on the basis of sex, Leal-Rutten is entitled to recover from Defendants: (1) compensatory damages; (2) punitive damages; and (3) attorney's fees and costs.

**TWELTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYCHRL: SEX DISCRIMINATION**
(***On Behalf of Leal-Rutten Individually***)

248.    Leal-Rutten hereby repeats and realleges the foregoing allegations as if set forth fully herein.

249.    At all relevant times, Leal-Rutten was an employee within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

250.    Defendants operated a business that discriminated against Leal Rutten in violation of Section 296(1)(a) with respect to the terms, conditions, and privileges of her employment by denying her a promotion because of her sex.

251.    Defendants conduct was intentional, malicious, and in reckless disregard of Leal-Rutten's protected rights under the NYCHRL.

252.    As a result of Defendants' unlawful discriminatory practices, Leal-Rutten sustained injury, including economic damages and past and future physical and emotional distress.

253.    Due to Defendants' violations under the NYSHRL, based on discrimination on the basis of sex, Leal-Rutten is entitled to recover from Defendants: (1) compensatory damages; (2) punitive damages; and (3) attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the NYLL Class, respectfully request that this Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal and State law;

B.    Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide FLSA Plaintiffs with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.    Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiffs with a list of all members of the NYLL Class, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

E.    Designate Plaintiffs as the representatives of the NYLL Class, and their counsel of record as class counsel;

F.      Determine the damages sustained by FLSA Plaintiffs and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of FLSA Plaintiffs and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

G.      Determine the damages sustained by Plaintiffs and the NYLL Class as a result of Defendants' violations of the NYLL, and award those damages against Defendants and in favor of Plaintiffs and the NYLL Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

H.      Award Plaintiffs, the FLSA Collective, and the NYLL Class an additional equal amount as liquidated damages;

I.      Award Plaintiffs Almazo and Guerrero all appropriate relief pursuant to their individual claims under the FLSA and NYLL;

J.      Award Plaintiff Leal-Rutten all appropriate relief pursuant to her individual claims under the NYSHRL and NYCHRL;

K.      Award Plaintiffs, the FLSA Collective, and/or the NYLL Class their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

L.      Grant Plaintiffs, the FLSA Collective, and/or the NYLL Class such other and further relief that the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, on behalf of themselves, the FLSA Collective, and the NYLL Class, hereby

demand a trial by jury on all issues of fact and damages.

Dated: January 5, 2024    **FARUQI & FARUQI, LLP**
   New York, New York

        By: _/s/ Innessa M. Huot_____
         Innessa M. Huot
         Shawn R. Clark

        685 Third Avenue, 26th Floor
        New York, New York 10017
        Tel: 212-983-9330
        Fax: 212-983-9331
        ihuot@faruqilaw.com
        sclark@faruqilaw.com

        *Attorneys for Plaintiffs, the Proposed FLSA*
        *Collective, and the Proposed NYLL Class*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIGUEL ALMAZO, AYRTON GUERRERO, KELLY LUNA, and EVA LEAL-RUTTEN, on behalf of themselves and others similarly situated, | Civil Case No.: |
| Plaintiffs, | **CONSENT TO SUE** |
| v. | |
| 44 STREET F&B LLC d/b/a LAMBS CLUB, and THE GRAND TOUR COLLECTION LLC d/b/a LAMBS CLUB, CHRIS MILLER, and JACK LOGUE, | |
| Defendants. | |

I, Miguel Almazo, was employed by Defendants within the last three years and am a named Plaintiff in the above-captioned action, *Almazo, et al. v. 44 Street F & B LLC, et al.*, pending in the United States Court for the Southern District of New York.  I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): _Miguel Almazo_____

Signature: _____    Date: _1/4/2024 | 2:48 PM EST_____

DocuSigned by:

4FE9032759DD4FC...

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIGUEL ALMAZO, AYRTON GUERRERO, KELLY LUNA, and EVA LEAL-RUTTEN, on behalf of themselves and others similarly situated, | Civil Case No.: |
| Plaintiffs, | **CONSENT TO SUE** |
| v. | |
| 44 STREET F&B LLC d/b/a LAMBS CLUB, and THE GRAND TOUR COLLECTION LLC d/b/a LAMBS CLUB, CHRIS MILLER, and JACK LOGUE, | |
| Defendants. | |

I, Ayrton Guerrero, was employed by Defendants within the last three years and am a named Plaintiff in the above-captioned action, *Almazo, et al. v. 44 Street F & B LLC, et al.*, pending in the United States Court for the Southern District of New York.  I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): _Ayrton Guerrero_____

DocuSigned by:

Signature: _____BF87225B09D746A..._____    Date: _1/4/2024 | 1:15 PM EST_____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MIGUEL ALMAZO, AYRTON GUERRERO, KELLY LUNA, and EVA LEAL-RUTTEN, on behalf of themselves and others similarly situated, | Civil Case No.: |
| Plaintiffs, | **CONSENT TO SUE** |
| v. | |
| 44 STREET F&B LLC d/b/a LAMBS CLUB, and THE GRAND TOUR COLLECTION LLC d/b/a LAMBS CLUB, CHRIS MILLER, and JACK LOGUE, | |
| Defendants. | |

I, Kelly Luna, was employed by Defendants within the last three years and am a named Plaintiff in the above-captioned action, *Almazo, et al. v. 44 Street F & B LLC, et al.*, pending in the United States Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

KELLY LUNA
Name (Print): _____

DocuSigned by:

Signature: _____
EA0FD9B7CFE14EE...

Date: _____
1/4/2024 | 10:07 AM PST

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MIGUEL ALMAZO, AYRTON GUERRERO, KELLY LUNA, and EVA LEAL-RUTTEN, on behalf of themselves and others similarly situated, | Civil Case No.: |
| Plaintiffs, | **CONSENT TO SUE** |
| v. | |
| 44 STREET F&B LLC d/b/a LAMBS CLUB, and THE GRAND TOUR COLLECTION LLC d/b/a LAMBS CLUB, CHRIS MILLER, and JACK LOGUE, | |
| Defendants. | |

I, Eva Leal-Rutten, was employed by Defendants within the last three years and am a named Plaintiff in the above-captioned action, *Almazo, et al. v. 44 Street F & B LLC, et al.*, pending in the United States Court for the Southern District of New York.  I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print):    Eva Rutten

Signature: _____    Date: _____
DocuSigned by:
086AD092F3AE459...                        1/4/2024 | 4:50 PM EST